No. 1859.—J. Pinckney Smith *v.* J. A. B. Williams.—Mrs. M. E. Dorsey, Intervenor.

A and B entered into a written contract of partnership to carry on the planting business in the parish of Morehouse. A, one of the partners, made a contract in his own name with Smith & Carr, commission merchants in the city of New Orleans, to furnish supplies, etc., for the plantation in the parish of Morehouse. Smith & Carr took the individual note of A, in the name of Smith, in settlement of the account. A and B settled their partnership at the close of the year, and divided the cotton made on the place. B shipped her part of the cotton to her own merchant. Smith, as holder of the note given by A, brought suit, and sequestered the cotton of B, in the hands of her merchant in New Orleans, alleging that he had a privilege on the cotton for the supplies furnished, which were used to make it   B intervened in this suit, and claimed the cotton as her individual property, and denied that it was subject to the privilege of Smith for supplies furnished. Held—That A, having contracted for the supplies in his own name and given his individual note in settlement of the account, no privilege existed on the crop made in partnership. That the debt being against an individual, property belonging to a partnership could not be made liable therefor. That the crop having been divided between the partners, that which belonged to and had been taken possession of and shipped by one partner, was not liable for the debts of the other partner, even though it were shown that the supplies furnished by the creditor for which the debt was contracted was used in making the crop.

It would seem that where a plantation has been worked in partnership, no privilege exists in favor of the commission merchant, who has made advances and furnished supplies to one of the partners, on the portion of the crop which belongs to the other partners. To hold the interest of the other partners in the crop liable for the supplies, they must have been furnished to the partnership, and not to an individual, although he be a partner.

A PPEAL from Fourth District Court of New Orleans. *Théard, J. Hays & New* and *C. F. Bemiss*, for plaintiff and appellant. *Breaux & Fenner*, for intervenor and appellee. Defendant not represented.

Wyly, J. In 1866 the defendant, Williams, and the intervenor, Mrs. Dorsey, cultivated in partnership a plantation, owned by the latter, in the parish of Morehouse. It was under the management and supervision of Williams. The terms of the partnership were that half the expenses of supplies and labor should be furnished by each partner, and that in consideration of Williams' services as manager, Mrs. Dorsey was to furnish the land free of rent.

It appears that Mrs. Dorsey furnished her part of the supplies according to contract, and a partnership settlement was had in which Mrs. Dorsey received the twelve bales, the subject of the present litigation, as her share of the cotton produced on the place.

It, also, appears that Williams obtained advances from the plaintiff, J. Pinckney Smith, a cotton factor of this city, to make the crop, and that the settlement occurred between the partners without paying Smith. Mrs. Dorsey shipped the twelve bales, her share of the products of the crop, to Messrs. Payne, Huntington & Co., cotton factors of this city, for sale, and J. Pinckney Smith sued out a writ of sequestration and caused the same to be seized, at the same time suing Williams, alleging his indebtedness to him, and, also, that he had a privilege as furnisher of supplies on said consignment.

The court *a qua* gave judgment for plaintiff for the amount claimed, against Williams, but maintained the intervention of Mrs. Dorsey,

recognizing her as the owner of the twelve bales of cotton, and dismissed the sequestration of plaintiff. Plaintiff has appealed.

Smith was not a party, nor was he aware of the terms of the partnership formed between Williams and Mrs. Dorsey. He simply furnished supplies to make a crop, which was under the supervision of his debtor, Williams. His supplies contributed to make the crop, of which the twelve bales, involved in this litigation, were part. The question is : Has he lost the privilege which the law gave him on this cotton by the division of the products of the predial estate by the partners to which he was not privy. We think not. The law is quite clear that no partition by the joint owners or partners can defeat the creditors of the partnership or destroy their privilege upon the thing held in common.

The privilege granted by law to factors for the supplies furnished to produce a crop, would be vain and nugatory if parties were thus permitted to shuffle off the rights of creditors attached to the thing produced. The plaintiff contributed to produce the crop, the common interest of the partnership, and, in our view of the law, his rights therein are superior to that of either of the partners, as well after the division as before.

It appears, however, that the indebtedness of Williams occurred prior to the act of 1867, giving the factor a lien for money advanced as well as the supplies. Under the law existing at the time, the factor had only a privilege for the supplies. It appears from the evidence that about half the indebtedness of Williams was for cash advanced, for which the plaintiff, by the law then in force, had no privilege. We think that Smith's privilege should be recognized for one-half of the one thousand and thirty-eight dollars and four cents, and interest, for which he had judgment against the defendant, Williams.

It is, therefore, ordered that the judgment appealed from be amended by recognizing and allowing the privilege of plaintiff on the cotton seized, to the amount of five hundred and nineteen dollars and two cents, with legal interest from judicial demand ; that his sequestration to that extent be maintained, and, as thus amended, that the judgment of the court below be affirmed. It is further ordered that the intervenor pay costs of this appeal

---

ON REHEARING.

LUDELING, C. J. Mrs. M. E. Dorsey agreed to plant in partnership with J. A. B. Williams, during the year 1866, on the terms following :

Each was to furnish one-half of the mules, farming implements, supplies, and labor necessary to make the crop ; and Mrs. Dorsey was to furnish her lands, and Williams his personal services on the place.

Mrs. Dorsey complied with her engagement—so did Williams. In order to enable him to fulfill his contract, however, he was obliged to obtain credit from others, in the city of New Orleans and elsewhere. It appears that Thomas M. Scott & Co., and Smith & Carr made advances *to him* in moneys and supplies.

In 1867 the partners settled, and divided the cotton raised on the place cultivated in partnership, and Mrs. Dorsey received her portion thereof, and shipped it to her agents in New Orleans.

Then, J. P. Smith, alleging that J. A. B. Williams owed him one thousand and thirty-eight dollars and four cents for supplies furnished by him, as factor and commission merchant, to the said Williams to carry on a plantation in the parish of Morehouse, had the cotton allotted to Mrs. Dorsey sequestered as the property of Williams.

As the evidence of his debt against J. A. B. Williams, the plaintiff annexed to his petition the individual note of J. A. B. Williams in favor of J. P. Smith.

The evidence does not show that J. P. Smith furnished supplies to Williams or to the partnership. It does not show that either Thomas M. Scott & Co. or Smith & Carr furnished any supplies to the partnership, existing between Mrs. Dorsey and Williams, or that they even knew of the existence of such a partnership. Smith & Carr gave credit to J. A. B. Williams; their advances in moneys and supplies were to him individually. Under the circumstances of this case, the parties who made advances to Williams acquired no privilege on the portion of the crop belonging to Mrs. Dorsey, even if it had been proved that the supplies were used on the place. It is clear J. P. Smith has no privilege on her cotton. The note sued on is in favor of J. P. Smith, and it is signed by J. B. Williams. This shows that neither Smith & Carr nor J. P. Smith looked to the partnership or to Mrs. Dorsey for payment for the advances made.

On the trial the plaintiff introduced in evidence an account in favor of Smith & Carr against J. A. B. Williams for supplies, money, commissions, interest, etc., corresponding in amount with the note sued on ; and it is proved that the note was given for this account. Although this evidence contradicts the plaintiff's own allegation in his petition, that he furnished the supplies, we will give it full weight, as it was not objected to.

It does not, however, establish a privilege against the intervenor or against the partnership, of which she was a member—nay, it is not even alleged in the petition that there exists a privilege against her or the partnership. The allegation is that plaintiff has a privilege debt against J. A. B. Williams, and the cotton is sequestered as his cotton. It is proved positively that the moneys advanced were for Williams' personal use ; and it is not clearly proved where the supplies went to —the evidence, creates, at the most, only a probability that they may

have been used on the plantation, cultivated in partnership. This is. not sufficient, even if Williams could have created a privileged debt against her—"*Actore non probante absolvitur reus.*" The property sequestered belongs to the intervenor.

It is therefore ordered and adjudged that the judgment of this court rendered on the thirteenth of December, 1869, be set aside, and that. the judgment of the district court be affirmed, with costs of appeal.

---

WYLY, J., *dissenting.* I still adhere to the opinion of this court rendered in this case on thirteenth of December, 1869.

The lien of the furnisher of supplies attaches. to the products as. well after division thereof by the planting partners as when they were held by them in indivision.

The privilege springs from the nature of the debt; it is an accessory to the principal obligation and accompanies it without a written transfer. The note on which this suit is founded, has for its consideration the items stated in the account of Smith & Carr against the defendant, J. A. B. Williams; it represents that debt.

The witness Walden, the clerk of Smith & Carr, who took the note from the maker, swears positively that the account in evidence, "is a statement of Williams' account and for which the note was given, being the note sued upon."

It matters not how the clerk of Smith & Carr drew the note in closing their account with the defendant, Williams, whether it was. made payable to the firm or to J. Pinckney Smith, it remains, nevertheless, as an evidence of that debt. Whether the name of the firm who furnished the supplies was mentioned in the note or not, in no manner affected the question of privilege.

The note before us evidences the debt and the privilege resulted from its character, regardless of the form of the instrument.

If the debt was for supplies furnished to make the crop which the defendant and intervenor were raising in partnership, a lien on that crop arose, it matters not in whose name they were furnished, 'or whether credit was given to the partnership or to one of the partners only. If the debt was for supplies it is a matter of no importance in whose name they were furnished, whether in the name of Smith & Carr or in the name of J. Pinckney Smith.

Plaintiff being the holder of the note is presumed to be the owner of the debt and also of the privilege accompanying it, if the consideration was for supplies to make the cotton sequestered.

It is no defense to set up that the plaintiff is not the owner of the note—that it evidences a debt to Smith & Carr, and not to J. Pinckney Smith, the payee. This would not concern the defendant, nor any one else, unless he had equities to plead against the party in whom

the alleged ownership.is invested. It is not pretended that there any equities to plead in bar of this demand as against Smith & Carr.

I repeat, whether the supplies furnished to make the cotton sequestered, were by Smith & Carr, or by J. Pinckney Smith, in no manner concerns the intervenor, Mrs. Dorsey. If the debt evidenced by the note was for supplies the privilege is attached to the cotton, it matters not who owns the note, or who advanced the supplies. I think the evidence in the record shows beyond doubt that the supplies were furnished by Smith & Carr to make the crop, and that the note in suit evidences that debt which has not been paid.

I think the brief of the intervenor, in effect, admits that the supplies were furnished by Smith & Carr. In it I find the following statements: "If the court can find in the record a word of evidence to show any supplies furnished except those stated in the account current of Williams with ' Smith & Carr,' and which were furnished by Smith & Carr, we will depart satisfied. We will do the same if the court can find in the pleadings or evidence any allegation or proof that J. Pinkney Smith has the right to assert a privilege for supplies furnished by Smith & Carr."

Smith declared upon a note which, on its face, shows that the consideration was " supplies furnished to carry on the planting of the place known as Mrs. Dorsey's."

The evidence shows that that note was given in settlement of the account of Smith & Carr and it evidences that debt. As the holder of the debt to Smith & Carr, J. Pinckney Smith undoubtedly had the right to assert the privilege accessory to that debt without a written transfer from its original owners.

For these reasons and those assigned in the original opinion of this court, I feel it my duty to dissent from the opinion of the majority of the court just rendered.